# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT GREENEVILLE

| | | |
|---|---|---|
| AARON JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 2:25-CV-193-DCLC-CRW |
| | ) | |
| BRYCE ERICKSON, J. EDWARDS, | ) | |
| S. BECKETT, VINSON W., and | ) | |
| M. PATTERSON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Aaron Johnson, a prisoner in the custody of the Tennessee Department of Correction ("TDOC") currently housed at the Carter County Detention Center ("CCDC"), filed a pro se prisoner complaint under 42 U.S.C. § 1983 [Doc. 2] and motion for leave to proceed *in forma pauperis* [Doc. 1]. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion, **DISMISSES** the complaint for failure to state a claim, and **PERMITS** Plaintiff an opportunity to file an amended complaint.

## I.     MOTION TO PROCEED *IN FORMA PAUPERIS*

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee. *See* 28 U.S.C. § 1915(a). A review of Plaintiff's motion [Doc. 1] demonstrates that he lacks sufficient financial resources to pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, this motion [*Id.*] will be **GRANTED**.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 220 West Depot Street, Suite 200, Greeneville, Tennessee 37743 twenty percent (20%) of Plaintiff's

preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk will be **DIRECTED** to send a copy of this Order to the Court's financial deputy and the custodian of inmate trust accounts at Plaintiff's current facility to ensure compliance with the PLRA's requirements for payment of the filing fee.

## II.     COMPLAINT SCREENING

### A.     Screening Standards

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, allegations that give rise to a mere possibility that a plaintiff might later establish

undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

B.     **Plaintiff's Allegations**

Plaintiff was transferred to the CCDC from the Sullivan County Jail on June 2, 2025 [Doc. 2 p. 8]. Plaintiff brought "brand new hygiene and toothpaste" with him to the CCDC from the Sullivan County Jail [*Id.*]. "They have the same exact commissary" in Sullivan County as they do in Carter County [*Id.*]. But when Plaintiff arrived at the CCDC, "they" told him he could not have any of his hygiene [*Id.*]. Plaintiff asked for his hygiene on August 24, 2025, and he was told that he "couldn[']t have what every other inmate in the jail has to shower with" [*Id.*]. So, Plaintiff had his cellmate "type up a request[,]" and it was approved and brought to Plaintiff the very next day [*Id.*]. They have since moved the inmate to another cell and told him to stop helping Plaintiff [*Id.*].

On July 5, 2025, Plaintiff and his cellmate got into a fight, and the other inmate hit Plaintiff in the head with a tablet [Doc. 2 p. 3, 5]. The blow nearly knocked Plaintiff out, and he told the other inmate he "was done[,]" but the other inmate kept yelling and hitting Plaintiff [*Id.* at 5]. Sgt. J. Edwards responded to the incident, told the other inmate to stop hitting Plaintiff, and took him out of the cell [*Id.* at 3, 5]. Sgt. B. Erickson also responded, and the officers handcuffed the inmates [*Id.* at 5]. "They" asked Plaintiff if he wanted medical attention, and he responded that he did [*Id.* at 3]. So, Plaintiff was taken to medical, where Nurse Roy evaluated him, told him he likely had a mild concussion, and gave him Ibuprofen [*Id.* at 3–4, 5].

Sgt. B. Erickson and Sgt. J. Edwards then told Plaintiff that he would be locked down for five (5) days, but that he would not receive a write up, because "they didn[']t want to deal with the

3

paperwork or D Board" [*Id.* at 4]. Plaintiff was essentially told to stay quiet, and "they wrote something on paper that didn't happen instead of what really happened" [*Id.*]. Specifically, they wrote the incident up as a disturbance just to avoid having to do paperwork before the end of their shifts [*Id.* at 6]. Plaintiff knows Sgt. Erickson wrote the fight up as a disturbance because another officer told him [*Id.* at 7]. And numerous witnesses saw and heard the fight [*Id.*]. Plaintiff's face was "black and bruised up" after the incident, and he believes that he was placed on lockdown so the cameras would not capture his injuries [*Id.*].

Plaintiff had "a huge knot on the right side of [his] forehead" from where the other inmate hit him, and he has had brain and head trauma in the past [*Id.* at 6, 9]. Since the incident, he has had headaches and right eye pain, but he is afraid to say anything because Sgt. Erickson told Plaintiff "to keep [his] mouth shut" [*Id.* at 7].

Now Sgt. Erickson treats Plaintiff "like trash" [*Id.* at 4]. He refuses to help Plaintiff while going "out of his way to help others[,]" he is "very rude[,]" and he has turned the whole cell block against Plaintiff by telling the other inmates that "it was all [Plaintiff's] fault that they get shook down" [*Id.*]. Plaintiff does not feel safe at the CCDC now "because of what [ha]s happened here already with [Sgt. Erickson] and Sgt. Edwards" [*Id.*]. Plaintiff has done time at other facilities, and he has never been treated this badly or been this scared [*Id.* at 7–8].

Staff at the CCDC "do what they want[,] and the rules are changed day by day" [*Id.* at 11]. If staff members like an inmate, "they take it easy" on him [*Id.*]. But if they do not like an inmate, they treat the inmate "like trash" [*Id.*]. Sgt. Beckett helped an inmate by getting the inmate's dogs from his house and hiding at her house instead of turning them over to the State [*Id.* at 11–12]. That inmate received special treatment, and Plaintiff believes it is "unfair and unjust" not to treat people equally [*Id.* at 12–13].

4

Plaintiff is a TDOC inmate [*Id.* at 9]. He has "been begging to be sent to prison" so that his medical and dental needs can be met [*Id.* at 10]. Plus, the medical care at the CCDC "is a joke" [*Id.*]. His teeth hurt him so badly that he cries himself to sleep sometimes, but medical staff at the CCDC tell Plaintiff that his "family has to pay for it" [*Id.* at 9]. Plaintiff's family cannot afford to do so, however, as they are essentially destitute [*Id.* at 9–10].

Plaintiff has asked for a trustee job at the CCDC but was told he would never get a job at the facility [*Id.* at 10]. Plaintiff spoke to Cpt. Patterson and "was pretty much told the same thing" [*Id.*]. But there are people at the facility who have failed drug screens and still have trustee jobs just because staff members have their "favorites" [*Id.* at 10–11]. Plaintiff knows he has the right to work and save money [*Id.* at 14]. And he would like to go to prison so he can take college classes and participate in Odinist religious services, which they do not have at the CCDC [*Id.* at 14–15].

Plaintiff has filed multiple grievances and appeals, and when he asked for a § 1983 form, he was told "to get it [him]self" [*Id.* at 11].

Aggrieved, Plaintiff filed this action against Sgt. Bryce Erickson, Sgt. J. Edwards, Sgt. S. Beckett, Sgt. Vinson W., and Cpt. M. Patterson, seeking to be moved to another facility for medical treatment and to obtain employment [*Id.* at 3, 16].

**C.  Analysis**

To state a claim against any Defendant for relief under 42 U.S.C. § 1983, Plaintiff must establish that a "person" acting "under color of" state law deprived him of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Here, Plaintiff does not specify whether he is suing Defendants in their official capacities, their

5

individual capacities, or in both. Out of an abundance of caution, the Court will address Plaintiff's claims against Defendants in both their official and individual capacities.

### 1. Official-Capacity Claims

Defendants are all employed by Carter County, and thus, suit against them in their respective official capacities is suit against the County itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *see, e.g.*, *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Barber v. City of Salem*, 953 F.2d 232, 237 (6th Cir. 1992). In an action against an officer acting in an official capacity, "the plaintiff seeks damages not from the individual officer, but from the entity from which the officer is an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). However, Carter County is not liable "*solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Rather, to demonstrate the County's liability, a plaintiff must identify a policy or custom of the County and show that the implementation of that policy caused his particular injury. *See Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citation omitted).

But Plaintiff has not pled sufficient facts for the Court to plausibly infer that the County itself, rather than the independent actions of individual employees and/or the policies of any contracted medical service provider, caused the constitutional violations alleged in his complaint. *See, e.g., id.* at 364 (holding that a plaintiff seeking to establish municipal liability must "identify the policy, connect the policy to the [county] itself and show that the particular injury was incurred

6

because of that policy"). Accordingly, the Court will **DISMISS** all official-capacity claims against Defendants.

### 2. Individual-Capacity Claims

To state a claim against a defendant in his or her personal capacity, a plaintiff must adequately plead that the particular defendant, through his or her own actions, has violated the Constitution. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted). This requirement exists because constitutional liability cannot attach to a defendant solely based on his or her position of authority. *See Iqbal*, 556 U.S. at 676 ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *Monell*, 436 U.S. at 691 (finding that liability under § 1983 may not be imposed merely because a defendant "employs a tortfeasor").

#### a) Sgt. Erickson

Plaintiff alleges that Sgt. Erickson (1) improperly memorialized Plaintiff's July 5 fight as a disturbance (2) told Plaintiff "to keep [his] mouth shut[,]" and (3) is rude to Plaintiff and treats him poorly [*See, generally*, Doc. 2]. As a preliminary matter, the Court notes that Plaintiff concedes he received medical care after this incident, and Plaintiff does not appear to assert that he suffered any delay or denial of care as a result of Sgt. Erickson's alleged handling of this event [*Id.* at 3–4, 5]. Second, it is unclear to the Court what claim Plaintiff is attempting to make by asserting that Sgt. Erickson recorded the events of July 5 incorrectly. He could be asserting that Sgt. Erickson improperly gave him a disciplinary charge, that he failed to follow institutional policy in documenting the incident, and/or that he failed to properly investigate the matter. But

7

none of these allegations state a colorable § 1983 claim. *See, e.g., Person v. Campbell*, No. 98–5638, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) ("[T]he filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable under § 1983."); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest); *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law right, much less a constitutional right, to an investigation." (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973))).

Finally, Plaintiff contends that Sgt. Erickson threatened him and treats him "like trash" [*See, e.g.,* Doc. 2 p. 4]. But neither verbal harassment and/or threats by correctional personnel toward an inmate are not matters of constitutional dimension. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987). Accordingly, Plaintiff has failed to state a colorable § 1983 claim against Sgt. Erickson, and the Court will **DISMISS** this Defendant.

### b) Sgt. J. Edwards

Plaintiff contends that Sgt. Edwards responded to the July 5 incident between Plaintiff and his inmate and participated in Sgt. Erickson's failure to properly document the event. But, as noted above, these allegations fail to give rise to a constitutional claim. *See Person*, 1999 WL 454819, at *1; *McVeigh*, 1995 WL 236687, at *1; *Mitchell*, 487 F.3d at 378. Accordingly, the Court will **DISMISS** this Defendant.

### c) Sgt. Beckett

Plaintiff's only allegation against Sgt. Beckett is that she illegally hid an inmate's dog at her home [Doc. 2 p. 11–13]. But such an allegation does not implicate any of Plaintiff's own rights, and therefore, it fails to state a colorable equal protection claim. *See U.S. Const., amend.

8

XIV, § 1 (providing that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws"). Accordingly, the Court will **DISMISS** this Defendant.

### d) Sgt. Vinson W.

Plaintiff has not presented any facts alleging wrongdoing by Sgt. Vinson W., and therefore, the Court will **DISMISS** this Defendant. *See Iqbal*, 556 U.S. at 676 (holding § 1983 plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

### e) Cpt. M. Patterson

Plaintiff implies that Cpt. M. Patterson told him he would never receive a trustee job at the CCDC [Doc. 2 p. 10]. However, Plaintiff does not possess a constitutional right to employment in jail, and therefore, Cpt. Patterson's statements do not implicate Plaintiff's rights. *See, e.g., Martin v. O'Brien*, 207 F. App'x 587, 590 (6th Cir. 2006) (holding "a prisoner does not have a constitutional right to prison employment or a particular prison job"). Accordingly, Plaintiff has failed to state a cognizable § 1983 claim against Cpt. Patterson, and the Court will **DISMISS** this Defendant.

### 3. Remaining Claims

Without identifying any responsible Defendant, Plaintiff argues (1) he was denied his hygiene products that he brought with him from the Sullivan County Jail [Doc. 2 p. 8]; (2) his teeth hurt and medical staff at the CCDC tell him his family must pay for his dental care [*Id.* at 9]; and (3) as a TDOC inmate, he should be placed in a TDOC facility where he can obtain a job, attend college classes, and have access to Odinist religious services [*Id.* at 14–15].

First, the Court considers Plaintiff's allegation that he was denied hygienic supplies. Notably, Plaintiff does not allege that he did not have access to hygiene products at all, nor does

9

he allege that he was unable to purchase new products from commissary. He alleges only that he was not permitted to possess the hygiene products he brought with him from the Sullivan County Jail. And Plaintiff does not allege that he suffered any associated health issues or injuries as a result of the alleged deprivation. Therefore, Plaintiff's allegations are insufficient to establish that he experienced an "extreme deprivation[]" that denied him "the minimalized civilized measure of life's necessities" as necessary to establish an Eighth Amendment claim. *Hudson v. McMillan*, 503 U.S. 1, 8–9 (1992) (internal quotation marks and citation omitted); *see also Moore v. Chavez*, 36 F. App'x 169, 171 (6th Cir. 2002) (holding inmate who failed to allege "extreme discomfort" or complete denial of "basic elements of hygiene" did not state Eighth Amendment claim)). Moreover, Plaintiff states that his cellmate typed up a request for hygiene products, it was approved, and the products were delivered to Plaintiff the next day [*Id.* at 8]. Accordingly, these facts do not give rise to a well-pled Eighth Amendment claim regarding the alleged denial of hygiene supplies, and the Court will **DISMISS** this claim.

Second, Plaintiff complains that he does not have access to a job, religious services, and/or educational classes at the CCDC, even though he is a TDOC inmate who should be housed in a TDOC facility where he has access to such services [Doc. 2 p. 14–15]. But Plaintiff does not have a protected right to a job or classes. *See Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) ("Prisoners have no constitutional right to rehabilitation, education, or jobs."). And while Plaintiff has a First Amendment right to exercise his Odinist beliefs, *see Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972), he does not have an intrinsic right to group religious services to do so, *see Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010) (noting Sixth Circuit "has consistently permitted prisons to take into account the level of inmate interest in a particular religion when determining whether to hold services"). Further, even though Plaintiff is a TDOC inmate, he has no constitutional right

10

to be housed at any particular facility. *McCord v. Maggio*, 910 F.2d 1248, 1250 (1990) (holding prisoner housing is a matter squarely within the "broad discretion" of prison officials, "free from judicial intervention" except in extreme circumstances). Therefore, the Court will **DISMISS** all Plaintiff's claims regarding his placement at the CCDC as a TDOC inmate.

Finally, Plaintiff alleges that his teeth hurt and "medical says [that his] family has to pay for it" [*Id.* at 9]. Such an allegation implicates the Eighth Amendment, which "forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his] serious medical needs." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) (internal quotation marks omitted). An Eighth Amendment claim for denial of adequate medical treatment has two parts: (1) an objective component, which requires a "sufficiently serious" medical need; and (2) a subjective component, which requires the plaintiff to show the defendant was deliberately indifferent to that need. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994). Deliberate indifference "entails something more than mere negligence" but can be satisfied by "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 834. Under this standard, a state actor is not liable under § 1983 unless the plaintiff alleges facts which, if true, would demonstrate that the prison official (1) knew that the inmate faced a substantial risk of serious harm; and (2) disregarded that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 847.

The Court presumes Plaintiff's purported dental pain is a serious medical need. *See Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010) ("Dental needs fall into the category 'of serious medical needs' because '[d]ental care is one of the most important needs of inmates.'" (quoting *McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008))). But Plaintiff's complaint is bereft of

11

any additional facts that would allow this claim to proceed. That is, Plaintiff does not identify what his specific dental issue is, he does not disclose whether he has received any dental evaluation or treatment at all, and he does not identify the medical or dental care provider who allegedly told him that his family would have to pay for (some unspecified) treatment. And as to that last point, it is not clear whether Plaintiff is alleging the medical provider requires all inmates to pay for dental treatment before services are rendered, or if he is alleging that some individual medical provider indicated that he or she would not treat Plaintiff unless his family paid for the treatment. Regardless, Plaintiff does not allege that any of the named Defendants (none of whom are medical or dental providers) are responsible for this alleged constitutional violation. Accordingly, Plaintiff has failed to present sufficient facts to plausibly allege that his dental needs have been met with deliberate indifference, and the Court will **DISMISS** this claim.

Even so, because it is possible Plaintiff may be able to state a colorable claim if permitted to amend, the Court will permit Plaintiff an opportunity to amend this claim to identify the Defendant(s) and/or entity and attempt to set forth facts that set forth a viable claim regarding his dental care at the CCDC. *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("Under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA.").

Accordingly, **if** Plaintiff desires to proceed on such a claim, he **must** file an amended complaint within fourteen (14) days of entry of this Order that contains a short and plain statement of facts setting forth exactly what his dental issues are, what dental treatment or evaluation he has received at the CCDC to date, and the person(s) or entity responsible for telling Plaintiff that his

family must pay for his dental care.[1]  Further, Plaintiff must avoid conclusory legal statements or arguments in this amended complaint.  The Clerk will be **DIRECTED** to mail Plaintiff a § 1983 form for this purpose.

Plaintiff is **NOTIFIED** that the Court will only address the merits of Plaintiff's claims that relate to the dental-care claims in his original complaint.  Accordingly, Plaintiff **SHALL NOT** attempt to set forth in his amended complaint any additional claims, and he is advised that any such claims will be **DISMISSED**.  Further, Plaintiff is **NOTIFIED** that this amended complaint will be the sole operative complaint that the Court considers, and therefore, it **must** be complete in and of itself and must not refer to any previously filed allegations or pleadings.

Plaintiff is **NOTIFIED** that if he does not file an amended complaint by the deadline, the Court will **DISMISS** his complaint for failure to prosecute and comply with an order of the Court, and for failure to state a claim upon which relief may be granted.

Plaintiff is **NOTIFIED** that the Court **WILL NOT** consider any other kind of motion for relief until after the Court has screened the amended complaint pursuant to the PLRA, which the Court will do as soon as practicable.  Accordingly, the Court will automatically deny any motions filed before the Court has completed this screening.

### III.  CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

---

[1] The Court notes it is also unclear whether Plaintiff is alleging that inmates are responsible for paying for all dental care at the CCDC, or if they must only pay for certain types of dental treatment.  Therefore, Plaintiff should clarify this in any amended complaint he files.

13

4. The Clerk is **DIRECTED** to mail a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy;

5. Even liberally construing the complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted under § 1983, and it is therefore **DISMISSED without prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A;

6. The Clerk is **DIRECTED** to forward Plaintiff a § 1983 form;

7. Plaintiff is **ORDERED** to complete the § 1983 form within fourteen (14) days in accordance with the directives stated above **if** he desires to further pursue a claim related to the alleged denial of constitutionally adequate dental care;

8. Plaintiff is **NOTIFIED** that if he fails to file an amended complaint within the allowed time, the Court will dismiss this action for failure to state a claim and failure to prosecute and comply with an Order of the Court; and

9. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED**.

**ENTER:**

              s/Clifton L. Corker
              United States District Judge